UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 13-80831-CIV-MARRA

ALTMAN CONTRACTORS, INC.,
a Florida Corporation,

        Plaintiff,

v.

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, an
Arizona Company,

        Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiff's Motion for Partial Summary Judgment

[DE 25] and Defendant Crum & Forster Specialty Insurance Company's Corrected Motion for

Summary Judgment [DE 37][1].  All matters are ripe for the Court's consideration.  The Court has

reviewed all papers submitted in connection with these motions, the entire file, and is otherwise

duly advised in the premises.  The Court heard oral argument of the motions on February 19,

2015.

## BACKGROUND FACTS

The Parties are generally in agreement as to the facts that led to the commencement of

this lawsuit.  Altman Contractors, Inc. ("ACI") was the general contractor for the construction of

_____

[1]Crum & Forster did not withdraw its Motion for Summary Judgment at DE 35, which is
hereby denied as moot.

the Sapphire Condominium, a high-rise residential condominium in Broward County, Florida ("Condominium"). [DE 25 at 2 ¶1]. ACI carried insurance applicable to this project with Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster"). [*Id*. at 2-3, ¶3].

The Condominium served ACI with a Notice of Claim and Supplemental Notices of Claim pursuant to Chapter 558 of the Florida statutes. [*Id*. at 4, ¶¶7-8]. As discussed in detail below, Chapter 558 provides a presuit procedure for a property owner to assert a claim for construction defects against a contractor. The first of these Notices was served on or about April 10, 2012. Supplemental Notices were sent on May 8, 2012, November 15, 2012, and May 28, 2013. [DE 25 at 4, ¶8]. These Notices assert that there were construction defects in the project. Crum & Forster does not dispute that at least some of the claimed defects may constitute covered property damage under the policies. [DE 34 at 2].

On or about January 14, 2013, ACI sent a demand letter to Crum & Forster notifying it of the Condominium's November 15, 2012 claims. [DE 26-5]. ACI demanded that Crum & Forster defend and indemnify ACI relative thereto. Crum & Forster denied that it had a duty to defend ACI because the case was "not in suit". [DE 26-6 at 36-37].

On August 5, 2013, while asserting that it was not waiving this position, Crum & Forster advised ACI that it was exercising its discretion to participate in the response to the 558 Notice, and that it had hired the law firm Cole, Scott & Kissane to "participate" in the preparation of ACI's response. [DE 26-8]. ACI objected to Crum & Forster's selection of this law firm and demanded that the counsel that had been defending it up until that time be permitted by Crum & Forster to continue the defense. ACI also requested to be reimbursed for the fees and expenses that it had incurred from the time it placed Crum & Forster on notice of the 558 Notice. [DE 26

at 6, ¶15, DE 48-1, DE 48-2].  Crum & Forster refused both requests.

ACI's Complaint contains two counts. [DE 1].  Count I seeks a declaration determining that Crum & Forster owes ACI a duty to defend and indemnify it relative to the 558 Notice; declaring ACI's rights under the policies; and awarding ACI its attorneys' fees and costs.  Count II asserts a breach of contract claim.  ACI asserts that Crum & Forster's initial refusal to defend ACI constituted a breach of its duties under the policies.  ACI alleges that this caused it to incur costs investigating and defending against the 558 Notice, as well as the costs of tendering its defense to Crum & Forster.  ACI asserts that Crum & Forster further violated its duty to defend ACI by its unilateral appointment of counsel not satisfactory to ACI.

## CONTENTIONS OF THE PARTIES

ACI now moves for partial summary judgment solely on the issue of whether Crum & Forster's duty to defend its insured, ACI, was triggered when ACI demanded a defense to the Chapter 558 Notice. [DE 25].  Crum & Forster moves for summary judgment on all issues raised by the Complaint. [DE 37].  Although ACI did not seek summary judgment on the issue of Crum & Forster's appointment of counsel to defend ACI, in its opposition to Crum & Forster's motion, it asks the Court to deny Crum & Forster's motion on this point and grant summary judgment to ACI on this issue. [DE 46 at 2].

Crum & Forster argues that Fla. Stat. §558.004(13) bars a notice under Chapter 558 from constituting a claim for insurance purposes; therefore, it has no duty to defend or indemnify ACI in connection therewith. [DE 37].  It further argues that the Chapter 558 process does not constitute a "suit" under the terms of the policy. [DE 62].

ACI argues that the statute does not state that a Chapter 558 notice cannot constitute a

claim for insurance coverage purposes [DE 46]. It further argues that traditional tenets of contract interpretation; the terms of the subject policies themselves; and the purpose of Chapter 558 support the legal conclusion that the 558 process rises to the level of a "suit". [DE 25].

## SUMMARY JUDGMENT STANDARD OF REVIEW

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Parties are in agreement that their respective motions present only questions of law.

## DISCUSSION

### Fla. Stat. Ann. § 558.004(13) does not preclude ACI's claim.

First, the Court will discuss Crum & Forster's argument that Section 558.004(13) precludes ACI's claim.[2] If this were an accurate description of Florida law, it would resolve all issues pending between the Parties. No Florida court has addressed this issue. This Court must, therefore, determine how the Florida Supreme Court would decide the issue. As discussed below, the Court does not agree with Crum & Forster's interpretation of this statute.

Chapter 558 is what is commonly referred to as a notice and repair law. The Florida Legislature states that it

---

[2]Because jurisdiction in this case is premised on diversity, the Court applies the law of the forum state. Florida applies the law of the jurisdiction where an insurance contract was executed. *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). The policies at issue state that Plaintiff is the insured with an address in Boca Raton, Florida. The Broker for the insurance was in Jupiter, Florida [DE 26-1 at 1]. No party has suggested that the law of any state other than Florida applies to the interpretation of the insurance contracts at issue; therefore, the Court concludes that Florida law governs.

> finds that it is beneficial to have an alternative method to resolve
> construction disputes that would reduce the need for litigation as
> well as protect the rights of property owners.  An effective
> alternative dispute resolution mechanism in certain construction
> defect matters should involve the claimant filing a notice of claim
> with the contractor . . . that the claimant asserts is responsible for
> the defect, and should provide the contractor . . . with an
> opportunity to resolve the claim without resort to further legal
> process.

F.S.A. §558.001.  For purposes of this statute, ACI is a contractor, and the Condominium is a

claimant.  If a claimant files an action subject to Chapter 558 without first complying with the

requirements of the chapter, a defendant can move to stay the action until the claimant has

complied.  F.S.A. §558.003.

A procedure is set forth pursuant to which the claimant places the contractor on notice of

the alleged defect, and the contractor is given various options to respond relative thereto.  A

written response to the claimant must provide:

> (a) A written offer to remedy the alleged construction defect at no
> cost to the claimant, a detailed description of the proposed repairs
> necessary to remedy the defect, and a timetable for the completion
> of such repairs;

> (b) A written offer to compromise and settle the claim by monetary
> payment, that will not obligate the person's insurer, and a timetable
> for making payment;

> (c) A written offer to compromise and settle the claim by a
> combination of repairs and monetary payment, that will not
> obligate the person's insurer, that includes a detailed description of
> the proposed repairs and a timetable for the completion of such
> repairs and making payment;

> (d) A written statement that the person disputes the claim and will
> not remedy the defect or compromise and settle the claim; or

> (e) A written statement that a monetary payment, including insurance proceeds, if any, will be determined by the person's insurer within 30 days after notification to the insurer by means of serving the claim, which service shall occur at the same time the claimant is notified of this settlement option, which the claimant may accept or reject.  A written statement under this paragraph may also include an offer under paragraph (c), but such offer shall be contingent upon the claimant also accepting the determination of the insurer whether to make any monetary payment in addition thereto.  If the insurer for the person served with the claim makes no response within the 30 days following service, then the claimant shall be deemed to have met all conditions precedent to commencing an action.

F.S.A. §558.004(5).  If the contractor disputes the claim and will neither remedy the defect nor compromise and settle the claim, or does not respond at all to the claim within the prescribed period of time, the claimant may proceed with an action.  F.S.A. §558.004(6).

Crum & Forster provides the Court with a history of these kinds of statutes nationwide. [DE 37].  While interesting, as noted by Crum & Forster, "State legislatures have addressed liability insurance in different ways in their notice and repair statutes." [*Id*. at 5].  None of these other statutes contain the exact language contained within the Florida statute.

Section 558.004(13) states as follows:

> This section does not relieve the person who is served a notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section.  However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

Crum & Forster attempts to liken this provision to the Hawaii notice and repair law [DE

6

37 at 12]; however, the Hawaii statute differs from the Florida statute in a determinative way. The Hawaii statute states, in relevant part: "The notice of claim shall not constitute a claim under any applicable insurance policy and shall not give rise to a duty of any insurer to provide a defense under any applicable insurance policy unless and until the process . . . is completed." Haw. Rev. Stat. §672 E-3(a).  In contrast, the Florida statute does not say that the notice is not a claim.  It says that the **provision** of the notice is not a claim.  Nor does the Florida statute contain the specific language addressing the insurer's duty to defend contained in the Hawaii statute.

Courts interpreting statutes must "begin with the 'actual language used in the statute' because legislative intent is determined first and foremost from the statute's text."  *Raymond James Financial Services, Inc. v. Phillips*, 126 So.3d 186, 190 (Fla. 2013)(citations omitted).  "'When considering the meaning of terms used in a statute, [the] Court looks first to the terms' ordinary definitions, . . . definitions [that] may be derived from dictionaries.'"  *Raymond James Financial Services, Inc. v. Phillips*, 126 So.3d 186, 190 (Fla. 2013)(citations omitted).

All Section 558.004(13) does is clarify that nothing in the statute is intended to supplant the notice requirements under any applicable insurance policy.  There is certainly nothing in this section to support the extreme position taken by Crum & Forster that the Florida Legislature intended to bar a notice under Chapter 558 from constituting a claim for insurance purposes such that an insurer would have no duty to defend or indemnify an insured in connection therewith.

In fact, Crum & Forster's position is belied by the recent amendment to this section by the Florida legislature.[3]  CS/HB 87 added the following clarifying language to Section

---

[3]Although this amendment has not yet been signed into law by Florida's Governor, the amendment provides insight into the Legislature's intent.

558.004(13) (change underscored): "However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes <u>unless provided for under the terms of the policy</u>." CS/HB 87, 117th Regular Session (Fla. 2015).

> The House of Representatives Staff Analysis of this amendment states:
>
>> Section 558.004(13), F.S., provides that nothing in s. 558.004, F.S., relieves a contractor, subcontractor, supplier, or designer from complying with all the provisions of a liability insurance policy with regard to coverage of a construction defect claim and provides that providing a copy of the presuit notice to the contractor's insurer does not constitute a claim for insurance purposes.
>>
>> The bill clarifies s. 558.004(13), F.S. to provide that if the terms of the contractor's insurance policy permit a claim to be made by providing a copy of the presuit notice to the insurer, the notice may constitute a claim under the policy.

House Judiciary Committee Summary Analysis (April 9, 2015).

Thus, the Florida Legislature has reconfirmed that the intent of this section is for Chapter 558 to have no impact one way or another on the obligations of an insured to provide whatever notice is required by an underlying insurance policy.  Nothing in the language of the statute or the legislative history suggests that this provision acts as a bar to insurance coverage if the policy otherwise would provide for coverage.  The Court, therefore, rejects Crum & Forster's argument to the contrary.

### <u>The Alternative Dispute Resolution Mechanism Contained Within Chapter 558, F.S., Does Not Constitute a "Civil Proceeding"</u>

Having found no statutory bar to coverage in this case, the Court must now turn to the language of the policy to determine whether a 558 Notice triggers a duty to defend on the part of

Crum & Forster.  This issue is also one of first impression in Florida.

Interpretation of an insurance contract is a question of law.  *Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985).  In Florida, insurance policies are construed "in accordance with the plain language." *Chandler v. Geico Indemn. Co.*, 78 So. 3d 1293, 1300 (Fla. 2011), *reh'g denied* (Jan. 23, 2012)(quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000)).

"If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the another [sic] limiting coverage, the insurance policy is considered ambiguous." *Auto-Owners Ins. Co.*, 756 So.2d at 34.  Ambiguous policy provisions are interpreted liberally in favor of the insured.  *Id.*  "'Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous.'" *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1141 (11th Cir. 2011)(citation omitted).

The Court finds no ambiguity in the policy provisions at issue.  As discussed below, the plain language of the policy is not susceptible to more than one reasonable interpretation.

The policies issued by Crum & Forster to Plaintiff state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

[DE 26-1 at 50].

9

The policies define a "suit" as follows:

> "Suit" means a civil proceeding in which damages because of
> "bodily injury," "property damage" or "personal and advertising
> injury" to which this insurance applies are alleged.  "Suit"
> includes:
> a.      An arbitration proceeding in which such damages are
>         claimed and to which the insured must submit or does
>         submit with our consent; or
> b.      Any other alternative dispute resolution proceeding in
>         which such damages are claimed and to which the insured
>         submits with our consent.

[DE 26 at 3, 26-1 at 64].  Although the specific language in some of the policies differs

somewhat from this language, the differences are not material to the dispute between the Parties,

and no Party suggests to the contrary. [4]

Since the policies define a "suit" as a "civil proceeding", both Parties focus their

arguments on what this phrase means.  Plaintiff looks to *Black's Law Dictionary* for the

definition of a civil proceeding.  Plaintiff relies upon separate definitions of "civil" and

"proceeding" from the 1991 Sixth Edition of the Dictionary [DE 25 at 14].  The policies at issue,

however, were in effect from 2/1/2005 until 2/1/2012 [DE 1 at ¶9].  The Eighth Edition of

*Black's* came out in 2004, and the Ninth Edition came out in 2009.  The Tenth Edition, which is

in effect now, was published in 2014.

The Court agrees that the dictionary meaning of a phrase is instructive.  The definition of

"civil proceeding" in the current edition of *Black's Law Dictionary* does not support Plaintiff's

---

[4]By way of example, the language in policy GLO101124, Form CG 00 01 12 04 replaces
the phrase "damages because of 'bodily injury,' 'property damage' or 'personal and advertising
injury' to which this insurance applies are alleged" with "damages because of an act, error or
omission to which this insurance applies are alleged."

position. "Civil proceeding" is defined as: "A judicial hearing, session, or lawsuit in which the

purpose is to decide or delineate private rights and remedies, as in a dispute between litigants in a

matter relating to torts, contracts, property, or family law." *Black's Law Dictionary* 300 (10th ed.

2014).[5]  Nothing about the Chapter 558 process satisfies this definition.

Nor does the definition of "proceeding" in the relevant editions of *Black's* help Plaintiff's

cause.  *Black's* defines "proceeding" as:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing. 5. Bankruptcy. A particular dispute or matter arising within a pending case — as opposed to the case as a whole.

> > "'Proceeding' is a word much used to express the business done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment. As applied to actions, the term 'proceeding' may include—(1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of ne exeat; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the *remittitur*, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort." Edwin E. Bryant, *The Law of Pleading Under the Codes of Civil Procedure 3–4* (2d ed. 1899).

---

[5]Interestingly, the 8th and 9th editions of *Black's* contain no definition of the phrase "civil proceeding".  The Florida Supreme Court, in *Raymond James Financial Services, Inc.*, had to look to separate definitions of "civil action" and "proceeding" to arrive at its decision.  126 So.3d at 190.

*Black's Law Dictionary* 1241 (8th ed. 2004); 1324 (9th ed. 2009); 1398 (10th ed. 2014).

Plaintiff argues that "Chapter 558 is by definition a civil proceeding because it is 'an act necessary to be done in order to obtain a given end; a prescribed mode of action for carrying into effect a legal right'", citing to a small portion of the definition of "proceeding" in the 1991 edition of *Black's Law Dictionary* [DE 46 at 10].  As noted above, this language does not appear in the relevant editions of *Black's*.  Plaintiff notes that the "term 'proceeding' also encompasses '*[a]ll the steps or measures adopted in the prosecution or defense of an action*' and '*every step required to be taken in any cause by either party.*'" [DE 46 at 10-11, italics in original]. Since a claimant must send a 558 Notice prior to commencing an action, Plaintiff argues that it is a step required to be taken.  Once again, however, this is not the definition of "proceeding" that was in effect when the policies were issued, nor does the current definition of "civil proceeding" incorporate this language.

Pursuant to the relevant definitions, a proceeding can be "an act or step that is part of a larger action".  *Black's Law Dictionary* 1241(8th ed. 2004; 1324 (9th ed. 2009); 1398 (10th ed. 2014). The definition notes that "it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action."  *Id*.  Applying Plaintiff's general argument to the current definition, Plaintiff essentially argues that since a claimant must serve the Chapter 558 Notice before commencing a lawsuit, it is an act or step that is part of a larger action or a step taken in the prosecution of an action.  The Court disagrees.

In Section 558.001, the Legislature set forth its "findings and declaration" that

> it is beneficial to have an alternative method to resolve
> construction disputes that would reduce the need for litigation as
> well as protect the rights of property owners.  An effective

12

> alternative dispute resolution mechanism in certain construction
> defect matters should involve the claimant filing a notice of claim
> with the contractor, subcontractor, supplier, or design professional
> that the claimant asserts is responsible for the defect, and should
> provide the contractor, subcontractor, supplier, or design
> professional with an opportunity to resolve the claim without resort
> to further legal process.

Far from an act or step that is part of a larger action, Chapter 558 is intended to avoid the

commencement of an action.

The Court views the thrust of the definitions in *Black's* to be that for something to be a

"civil proceeding", there must be some sort of forum and some sort of decision maker involved.

This is consistent with the Florida Supreme Court's decision in *Raymond James Financial*

*Services, Inc. v. Phillips*, 126 So.2d 186 (Fla. 2013).  In *Raymond James*, the court held that the

phrase "proceeding" in a statute of limitations statute encompassed an arbitration proceeding,

because an arbitration proceeding takes place in a tribunal before a person whose job is to render

decisions.  *Id.* at 190-91.  The Court quoted the definition of "proceeding" in *Black's Law*

*Dictionary* as "[a]ny procedural means for seeking redress from a tribunal or agency."  *Id.* at 190.

The *Raymond James* Court also quotes the definition of "proceeding" in the Merriam-

Webster's Dictionary of Law as being "similar" to this definition.  The definition quoted by the

Court is: "a particular step or series of steps in the enforcement, adjudication, or administration

of rights, remedies, laws or regulations."  126 So. 3d at 190 n. 4.  Plaintiff argues that this

definition encompasses Chapter 558 as a "necessary step for the claimant to commencing

litigation for construction defects." [DE 65 at 3 n.2].  To the contrary, the definition supports this

Court's conclusion.  Chapter 558 has no "enforcement", no "adjudication" and no

"administration" of "rights, remedies laws or regulations."

13

The Legislature describes Chapter 558 as a "mechanism", not a "proceeding", and properly so.  Chapter 558 provides just that – a mechanism to guide the parties to enter into discussions with one another.  No part of Chapter 558 provides for a setting where the parties would appear before anyone to assist with this process.  There is no procedure contained therein that results in a decision or delineation of private rights and remedies.[6]  "Chapter 558 encourages settlement by providing a procedure to lead the parties to the waters of compromise; it does not make them drink."  *Hebden v. Roy A. Kunnemann Const., Inc.*, 3 So.3d 417, 419 (Fla. App. 4 Dist. 2009).  "The statute does not forfeit substantive rights as a penalty for noncompliance; it is expressly limited in scope."  *Id*.

"In the absence of precedents from Florida's courts . . . the case law of other jurisdictions that have examined similar policy provisions may be considered to determine the issues of state law as this Court believes the Florida Supreme Court would."  *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135 (11th Cir. 2011).  In this regard, the Court has reviewed several cases from other jurisdictions.

The Tenth Circuit in *The Cincinnati Ins. Co. v. Amsco Windows*, 593 Fed. App'x 802 (10th Cir. 2014), held that Nevada's pre-suit procedure for a property owner to assert a claim for construction defects against a contractor was not a "suit" for purposes of a general liability insurance policy containing language similar to that at issue in the instant case, because noncompliance does not result in any adverse judgment or obligation but rather imposes limited consequences in subsequent litigation.  The Court noted that the consequences to a contractor of

---

[6]Plaintiff's argument that at the very least this was an alternative dispute resolution proceeding to which Crum & Forster agreed when it appointed counsel, [DE 65 at 6-7], similarly does not succeed, because the Chapter 558 mechanism is not a "proceeding" of any kind.

noncompliance "although serious, are not parallel to the often case-determinative consequences of noncompliance in the context of lawsuits or mandatory arbitrations." *Id*. at 810.  The same can be said for the Florida statute.

The Tenth Circuit concluded by noting that even if they could consider the pre-litigation process to be a civil proceeding, it would be an alternative dispute resolution proceeding as to which the policy would require consent, which had not been given.  *Id*. at 811.  This is *dicta* in the *Cincinnati* decision, and, as noted *supra*, is inconsistent with this Court's view of the definition of a civil proceeding.  The Court, therefore, declines to follow this aspect of the *Cincinnati* decision.

In *Melssen v. Auto-Owners Insurance Company*, 285 P.3d 328 (Colo. Ct. App. 2012), the Colorado Court of Appeals held, as a matter of law, that the Colorado Defect Action Reform Act (CDARA), section 13-20-803.5, C.R.S. 2011, constituted an alternative dispute resolution proceeding under the applicable policy, which was similar to the policy at issue here.  The Court in *Melssen* relied upon a definition in *Black's* of "alternative dispute resolution proceeding" as "a procedure for settling a dispute by means other than litigation, such as arbitration or mediation." *Id.* at 334.  This Court agrees with *Black's* definition; however, neither the Colorado statute, nor the Florida statute, contains any procedure akin to arbitration or mediation.[7]  This Court, therefore, parts ways with the *Melssen* Court, and concludes that because the Florida Chapter 558 mechanism is not a "proceeding" of any kind, it is also not an alternative dispute resolution "proceeding".

---

[7]In Colorado, the parties can agree to mediate, but there is no mediation process built into the statute. Section 13-20-803.5.

15

The Court in *Clarendon America Ins. Co. v. Starnet Ins. Co.*, 113 Cal. Rptr. 3d 585 (4th Dist. Ct. App., Div. 3, Cal. 2011), held that California's Calderon Act, Civil Code section 1375 *et seq.*, is a "civil proceeding" covered by an insurance policy.  This Court finds *Clarendon* to be inapposite, because the Calderon Act is very different from the Florida statute at issue in this case.  For example, the Calderon Act requires the parties to select a dispute resolution facilitator to preside over the mandatory dispute resolution process,  *Id.* at 589, and the Calderon Process binds the parties in many respects. *Id.* at 592.

## CONCLUSION

Since the Court concludes that the Chapter 558 mechanism does not constitute a "civil proceeding", it is not a "suit" under the Crum & Forster policy.  Therefore, Crum & Forster had no obligation under the terms of the insurance policies at issue to defend or indemnify[8] Plaintiff relative thereto, and Crum & Forster did not breach the terms of the policies as a matter of law.[9]

Accordingly, it is hereby:

**ORDERED AND ADJUDGED** that:

1.  Defendant Crum & Forster Specialty Insurance Company's Motion for Summary Judgment [**DE 35**] is **DENIED AS MOOT**;

2.  Plaintiff's Motion for Partial Summary Judgment [**DE 25**] is **DENIED** ;

3.  Defendant Crum & Forster Specialty Insurance Company's Corrected Motion for

---

[8]When there is no obligation to defend, there is also no obligation to indemnify.  *See, e.g., Trailer Bridge, Inc. v. Illinois Nat'l Ins. Co.*, 657 F.3d 1135, 1146 (11th Cir. 2011).

[9]Having had no obligation to defend Plaintiff in connection with the Chapter 558 Notice, the Court need not address the issue of whether Crum & Forster had the right to select the counsel it appointed.

16

Summary Judgment [**DE 37**] is **GRANTED.  In accordance with Fed. R. Civ. P. 58, final judgment will be entered  by separate order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 4th day of June, 2015.

_____
KENNETH A. MARRA
United States District Judge